IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| JOSE J. VILLANUEVA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action Number: |
| vs. ) | 1:13-cv-00222-TWT |
| ) | |
| EL JINETE 2, INC., and JOSE ) | |
| JAVIER LOPEZ, ) | |
| ) | |
| Defendants. ) | |

**PLAINTIFF JOSE J. VILLANUEVA AND DEFENDANT EL JINETE 2, INC. AND DEFENDANT JOSE JAVIER LOPEZ'S
SETTLEMENT AGREEMENT AND
FULL AND FINAL MUTUAL RELEASE OF ALL CLAIMS**

This Settlement Agreement and Full and Final Mutual Release of all Claims ("Agreement") is made and entered into by and between Jose J. Villanueva ("Plaintiff") and El Jinete 2, Inc. and Jose Javier Lopez ("Defendants"). The foregoing Plaintiff and Defendants are collectively referred to as "Parties."

W I T N E S S E T H:

**WHEREAS,** the Plaintiff filed a lawsuit against Defendants in the United States District Court for the Northern District of Georgia, Civil Action number 1:13-CV-00222-TWT, alleging violations of the Fair Labor Standards Act ("the Federal lawsuit"); and

1

**WHEREAS**, the Defendants have denied and continue to deny any liability for those claims and assert that there is no factual or legal basis for Plaintiff's allegations of liability; and

**WHEREAS**, without any admission of liability by any of the Parties, the Parties, represented by counsel, entered into an oral settlement agreement on December 12, 2013, in which they set forth the terms of a general agreement between the Parties; and

**WHEREAS**, the Parties desire to set forth in this written Agreement their final settlement terms;

**NOW, THEREFORE**, in exchange for good and valuable consideration, including, but not limited to, the execution of this Agreement and the Parties' consent to the dismissal with prejudice of all charges and claims alleged or that could have been alleged in the above-referenced Federal Lawsuit, the sufficiency and receipt of which are hereby acknowledged, the Parties agree as follows:

**1.0    Consideration.**

As consideration for the Plaintiff's agreement to be bound by the terms of this Agreement, Defendants will cause to be paid to Plaintiff and/or on his behalf Fifty-Nine Thousand Dollars ($59,000.00) (the "Settlement Amount"). This Settlement Amount includes the payment of all of Plaintiff's attorney fees and costs. The Parties agree that the Settlement Amount of $59,000.00 shall be divided

2

between the Plaintiff and his counsel as follows: Thirty-Three Thousand Dollars ($33,000.00) to Plaintiff's counsel in attorney fees; and Twenty-Six Thousand Dollars ($26,000.00) to Plaintiff Jose J. Villanueva. The Parties agree that the Settlement Amount shall not incur any additional interest.

The Defendants shall be jointly and severally liable for the entire Settlement Amount and agree to pay the Settlement Amount as follows:

(a) Twenty Thousand Dollars ($20,000.00) within ten (10) days after the United States District Court issues an Order approving the Settlement Agreement in the Federal Lawsuit; and

(b) The remaining balance of Thirty-Nine Thousand Dollars ($39,000.00) to be paid in twelve equal installment payments of Three Thousand, Two Hundred and Fifty Dollars ($3,250.00) over twelve (12) consecutive months commencing within one month from the date the Settlement Agreement is executed by the Parties; and

(c) The Defendants' monthly installment payments shall be made as follows:

1. Each payment of Three Thousand, Two Hundred and Fifty Dollars ($3,250.00) shall be made payable to the Plaintiff c/o Kevin D. Fitzpatrick, Jr., DELONG CALDWELL BRIDGERS AND FITZPATRICK LLC, 3100 Centennial Tower, 101 Marietta Street, Atlanta, Georgia 30303.

2. Each monthly payment shall become due and payable on the same date of each month as the date of the month that the Plaintiff executes the Settlement Agreement until the entire remaining balance of Thirty-Nine Thousand Dollars ($39,000.00) has been paid in full.

3

3. DELONG CALDWELL BRIDGERS AND FITZPATRICK LLC shall be responsible for disbursing the correct amounts to Plaintiff each month.

4. In the event that DELONG CALDWELL BRIDGERS AND FITZPATRICK LLC does not receive the one-time payment of Twenty Thousand Dollars ($20,000.00) within ten (10) days after the date that the U.S. District Court issues an Order approving this Settlement Agreement or the law firm does not receive a monthly payment on the scheduled date of any month, DELONG CALDWELL BRIDGERS AND FITZPATRICK LLC shall promptly provide written notice as to such event via a fax sent to Albert J. Bolet, Esq. at GOICO & BOLET, P.C. at fax number (404) 320-3026.

> i. The Defendants shall have five (5) calendar days from the date of the receipt of the fax by their counsel to cure the deficiency.
>
> ii. There shall be no penalty imposed upon Defendants for the Defendants' early payment of the outstanding balance.

(d) For tax reporting purposes, the Parties agree that the Settlement Amount shall be split into equal halves with one half being reported on a W-2 form and the other half on a 1099 form. In the event that any of the Settlement Amount shall be deemed taxable in any form, Plaintiff agrees to indemnify Defendants for any sums for which Plaintiff may become liable to any federal, state or local government or agency to cover federal or state withholding taxes and Social Security taxes as a result of such taxability, provided in no instance shall the Plaintiff be responsible for the Defendants' share of any Social Security tax assessment. Each Party will be responsible for any penalties or interest which may be assessed against such Party as a result of the classification of this payment.

(e) At the conclusion of calendar years 2014 and 2015, Kevin D. Fitzpatrick,

4

Jr. will receive a 1099 to reflect the legal fees paid as of the end of the calendar year.

## 2.0   General Release of Defendants.

The Defendants, for and in consideration of the general release granted by the Plaintiff and other good and valuable consideration, the receipt of which is hereby acknowledged, do hereby remise, release, acquit, satisfy, and forever discharge the Plaintiff, together with his present and former attorneys, agents, assigns, heirs, executors, administrators and successors, and any other person or entity who has acted or purported to act on his behalf (the foregoing together with the Plaintiff being hereinafter referred to as the "Plaintiff's Released Parties"), of and from any and all claims, demands, actions, causes of action, suits, damages, losses, costs, expenses and attorneys' fees of any kind and every character whatsoever, whether known or unknown, in law or in equity, which the Defendants ever had, now have, or may have against the Plaintiff's Released Parties arising from or relating to the Plaintiff's placement, employment or contractual relationships with the Defendants, including but not limited to the allegations contained in the above-referenced Federal Lawsuit, or by reason of any matter, cause, or thing whatsoever, from the beginning of time to the date of this Agreement.



**3.0   General Release of the Plaintiff.**

Effective upon the Defendants' payment of all funds due under this agreement, the Plaintiff, for and in consideration of the release by the Defendants, the Settlement Amount and other good and valuable consideration, the receipt of which is hereby acknowledged, does for himself, his attorney, attorneys, agents, assigns, heirs, executors, administrators and successors, hereby remise, release, acquit, satisfy, and forever discharge the Defendants, together with their assigns, successors, affiliated parent or subsidiary corporations or companies, agents, officers, directors, members, shareholders, officers, parent corporations, subsidiaries, partners, estates, executors, administrators and successors, employees, present and former attorneys, legal representatives, divisions and insurers, and any other person or entity who has acted or purported to act on the Defendants' behalf (the foregoing being hereinafter referred to as the "Defendants' Released Parties"), of and from any and all claims, demands, actions, causes of action, suits, damages, losses, costs, expenses and attorneys' fees of any kind and every character whatsoever, whether known or unknown, in law or in equity which they ever had, now have, or may have against the Defendants' Released Parties arising from or relating to the Plaintiff's placement, employment or contractual relationships with the Defendants, including but not limited to the allegations contained in the above-

 6 

referenced Federal Lawsuit, or by any reason of any matter, cause, or thing whatsoever, from the beginning of time to the date of this Agreement. Furthermore, and without in any way limiting the foregoing, the claims waived and released by the Plaintiff include any possible or alleged claims under the Americans with Disabilities Act, the Fair Labor Standards Act, the Equal Pay Act, the Employee Retirement Income Security Act, the Family and Medical Leave Act, the Age Discrimination in Employment Act, the Older Workers Benefit Protection Act, Title VII of the Civil Rights Act of 1964, the Civil Rights Act of 1991, the National Labor Relations Act, the False Claims Act, and all amendments to the foregoing, and any and all other possible claims under federal laws and/or the laws of the State of Georgia and any other state, any and all possible claims under common law, and any and all claims for back pay, benefits, interest, front pay, lost retirement benefits, compensatory damages, punitive damages, liquidated damages, attorneys' fees, costs, and declaratory relief.

**4.0 <u>Dismissal with Prejudice and Mutual Release by the Parties of All Claims</u>.**

In connection with the execution of this Agreement, the Parties have agreed to the dismissal of the Federal Lawsuit with prejudice. Upon Plaintiff's counsel's receipt of the full Settlement Amount required by this Agreement, Plaintiff shall within ten (10) days file a dismissal with prejudice of Plaintiff's Federal Lawsuit.



7



The Parties request that the Court retain jurisdiction pending the payment of all installments required by this Settlement Agreement.

The Parties agree that they will not attempt (or authorize an attempt) to initiate, or re-initiate, the allegations contained in the above-referenced Federal Lawsuit, any claims which could have been set forth therein, or any claims which could have arisen therefrom, in any manner, as of the time this Agreement is executed.

### 5.0 No Loss of Consortium.

The Plaintiff hereby represents and warrants that, at all times pertinent, no person sustained any loss of consortium, or has any claim whatsoever for any injury or damage alleged to have been sustained by Plaintiff arising from or relating to the Plaintiff's placement, employment or contractual relationships with the Defendants, including but not limited to the allegations contained in the above-referenced Federal Lawsuit; and Plaintiff does further agree to indemnify, defend and hold harmless the Defendants hereunder from any action which may arise in connection therewith to include any attorneys' fees, expenses of any kind or court costs associated with any such action.

### 6.0 Warranty.

The Plaintiff represents and warrants that he alone is entitled to assert any claim he may have against the Defendants of any kind or character arising out of,

8

or as a consequence of, any employment or contractual relationship with the Defendants, including but not limited to, the matters which were alleged or could have been alleged in the Federal Lawsuit. The Plaintiff further represents and warrants that he is fully authorized to enter into this Agreement and that he has not transferred or assigned any right to any claim or recovery against the Defendants. The Plaintiff agrees to indemnify and hold Defendants harmless from any claim by any other person who is determined to have the right or authority to assert any claim on his behalf against Defendants or by reason of any such transfer or assignment, as described in this paragraph, and further agrees to indemnify and hold Defendants harmless from any costs, expenses or damages sustained by reason of any such claim. The Defendants represent and warrant that they are fully authorized to enter into this Agreement and that they have not transferred or assigned any right to any claim or recovery against the Plaintiff.

**8.0    Non-Disparagement.**

A. The Plaintiff shall not make, repeat or publish any false and/or disparaging remarks or references, whether oral or in writing, whether in traditional media, any electronic communication medium including, but not limited to emails, blogs, chat rooms, Facebook, Twitter and LinkedIn, or otherwise, concerning the Defendants or any of their representatives, or otherwise take any action which might reasonably be expected to cause damage or harm to the

Defendants or any of their representatives. However, nothing in this Agreement prevents the Plaintiff in any way from communicating with or fully cooperating in the investigations of any governmental agency on matters within their jurisdictions. However, this Agreement does prohibit the Plaintiff from recovering any relief, including without limitation monetary relief, as a result of such activities. In agreeing not to make disparaging statements regarding the Defendants, the Plaintiff acknowledges that he is making, after the opportunity to confer with his counsel, a knowing, voluntary and intelligent waiver of any and all rights he may have to make disparaging comments about the Defendants including rights under the First Amendment to the United States Constitution and any other applicable federal and state constitutional rights. The Plaintiff further agrees and acknowledges that a court of competent jurisdiction may enter an injunction to prevent him from violating this paragraph and that such injunction would not constitute an unconstitutional or illegal prior restraint on his constitutional rights and that he is waiving his legal right to make such an argument.

B. The Defendants shall not make, repeat or publish any false and/or disparaging remarks or references, whether oral or in writing, whether in traditional media or any electronic communication medium including, but not limited to emails, blogs, chat rooms, Facebook, Twitter and LinkedIn, concerning the Plaintiff, or otherwise take any action which might reasonably be expected to

cause damage or harm to the Plaintiff. However, nothing in this Agreement prevents the Defendants in any way from communicating with or fully cooperating in the investigations of any governmental agency on matters within their jurisdictions. In agreeing not to make disparaging statements regarding the Plaintiff, the Defendants acknowledge that they are making, after the opportunity to confer with counsel, a knowing, voluntary and intelligent waiver of any and all rights they may have to make disparaging comments about the Plaintiff including rights under the First Amendment to the United States Constitution and any other applicable federal and state constitutional rights. The Defendants further agree and acknowledge that a court of competent jurisdiction may enter an injunction to prevent them from violating this paragraph and that such injunction would not constitute an unconstitutional or illegal prior restraint on their constitutional rights and that Defendants are waiving their legal right to make such an argument.

C. The Parties agree that if Defendants receive a request for an evaluation or reference from an employer or a prospective employer of the Plaintiff, Defendants shall provide only the dates of Plaintiff's employment by Defendants and a description of the position or duties performed during the time of such employment by Defendants.

**8.0 <u>Entire Agreement</u>.**



11



This Agreement represents the entire agreement between the Parties as to the subject matter contained herein. Neither this Agreement nor any provision thereof may be changed, waived, discharged or terminated orally, unless the Parties agree otherwise in writing by an instrument signed by the Parties.

**9.0  Compromise and Settlement.**

This settlement shall not be construed as an admission of liability or wrongdoing on the part of any Party. The undersigned Parties expressly acknowledge that this settlement is being made as a compromise and settlement of disputed claims; that execution of, and compliance with, this Agreement, including any consideration paid in furtherance of this Agreement is not, and shall not, be construed to be an admission by any of the Parties of any liability or obligation whatsoever, by whom liability is expressly denied.

**10.0  Drafting of this Document.**

This Agreement is entered into after full opportunity for negotiations by the Parties and their counsel. For purposes of construing this Agreement, all Parties shall be considered the drafters with an equal responsibility for drafting the document.

**11.0  Applicable Law.**

The Parties agree that this Agreement shall be construed pursuant to the laws of the State of Georgia, without reference to principles of conflicts of law of



12

Georgia or any other jurisdiction and, where applicable, the laws of the United States. The Parties agree that the state courts of Georgia, or (in the case of diversity of citizenship) the United States District Court for the Northern District of Georgia, shall have jurisdiction of any action or proceeding arising under this Agreement unless the Parties agree otherwise in writing. The Parties hereby agree to, contract for and consent to the personal and subject matter jurisdiction of such courts in any such suit, action or proceeding and waive any objection which any Party may otherwise have to the laying of venue of any such suit, action or proceeding in the locations as specified herein.

### 12.0 Survival.

The non-disparagement obligations entered into under this Agreement shall survive the full payment and resolution of all matters pursuant to this Agreement.

### 13.0 Partial Invalidity.

Each provision of this Agreement shall be considered separable, distinct and severable from the other and remaining provisions, and any breach, invalidity or unenforceability of any provision shall not impair the operation, validity or enforceability of those provisions that are valid and, to the extent allowed by law, such invalid or otherwise unenforceable provision may be modified by a court of competent jurisdiction so as to render it enforceable.

### 14.0 Counterparts.

This Agreement may be signed and executed in one or more counterparts, each of which shall be deemed an original and all of which together shall constitute one Agreement. A facsimile or electronic copy of a signature shall be deemed to be an original.

**15.0 Authorization.**

By signing below, each of the undersigned, individually and/or in his corporate capacity, represents and warrants that he is duly authorized and empowered to execute this Agreement and to bind the respective Party that he represents, and that this Agreement and its execution have been duly authorized by all necessary actions whatsoever on the part of such Party to this Agreement. The Plaintiff represents that he is executing this Agreement knowingly and voluntarily, and that he is legally competent to execute this Agreement. The Plaintiff affirms that the only consideration for his agreement to execute, and his execution of the Agreement, are the terms stated herein and that there are no other promises or agreements of any kind that have caused him to execute the Agreement; that he fully understands the meaning and intent of the Agreement, including but not limited to its final and binding effect; that he has had a reasonable period of time within which to consider the Agreement; and that he has had reasonable opportunity to receive legal counsel before executing this Agreement.



14

IN WITNESS WHEREOF, this Agreement is executed and entered into by the Parties effective as of the date of execution by the last Party to execute this Agreement.

_____
**JOSE J. VILLANUEVA**
DATE: 2-27-2014


_____
**EL JINETE 2, INC.**
BY: Jose Javier Lopez A
TITLE: VICE PRESIDENT
DATE: 2-25-2014



_____
**JOSE JAVIER LOPEZ, individually**
DATE: 2-25-2014